## UNITED EAST & WEST OIL CO. v. DYER.

### No. 5666.

Court of Civil Appeals of Texas. Texarkana.

Nov. 7, 1940.

Rehearing Denied Nov. 21, 1940.

990

Hurst, Leak & Burke, of Longview, for appellant.

Jones & Jones, of Marshall, and J. Edwin Smith, of Longview, for appellee.

WILLIAMS, Justice.

United East & West Oil Company, a corporation, defendant below, appeals from a judgment recovered by E. A. Dyer, plaintiff below, for personal injuries received in a gas explosion which occurred within a two-room house denominated by witnesses as a lease-house or bunk-house. Defendant in its operations of pumping oil from its wells and in heating the oil to separate the water therefrom, used gas for fuel, and for this purpose had constructed gas lines on its leasehold. This gas supply was furnished by the Hercules Gasoline Company, an independent concern.

In December 1936, plaintiff was employed by defendant as a pumper on a 24-hour duty of operating the pumping units, treating the oil, and doing other work incidental to this service. He immediately moved into this two-room house situated on the leasehold. At the same time he "hooked" on a gas line on the premises, which line ran within two feet of the house. Defendant "told" him to do this, and furnished a gas regulator, connections, and other material necessary to pipe gas into plaintiff's stove in the house. Plaintiff made the installation and performed all the work necessary thereto. An odorizer to warn of the presence of escaping and unburned gas was furnished and installed by plaintiff and his son on above connection prior to the explosion. Defendant did not furnish the odorizer. Plaintiff continuously used the house for living quarters to the date of the explosion on November 21, 1937. During this period of time he paid a $10 monthly rental for the house, which was deducted from his wages each month.

The explosion occurred around 1 a. m. Plaintiff's employment then required him to go on duty at midnight on a 12-hour shift. One Cherry handled the other shift. Plaintiff testified that he was awakened at 11:45 p. m. by Cherry whom he was to relieve; that Cherry had lighted an oil lamp and the gas stove in the kitchen before going off duty, and plaintiff knew this; that plaintiff left both lamp and stove burning when he went out upon the lease. He claims that he found the gas pressure so low that he had to adjust an engine and relight a fire under a heater on the lease; that the night was cold with a strong wind and he had returned to the house to change into heavier shoes before proceeding further, and as he sat down on the bed to do so the explosion occurred. This is plaintiff's explanation of the explosion, and the only explanation given by any one. This is his reason given for being in the house at the time of the explosion. No contention is made in any evidence that the pressure regulator was defective.

Plaintiff pleaded that he was engaged in the performance of his duties at the time of the explosion when he was in the house, and that the house had been furnished him by defendant in connection with his work there to be performed. He alleged that the gas furnished with the house fluctuated in pressure, at times was weak and played out; that the connection was not properly equipped with a malodorant device to warn plaintiff of the presence of escaping and unlighted gas; that each rendered the premises unsafe and dangerous, and each such alleged negligence of defendant was a proximate cause of his injuries.

Defendant entered a general demurrer and denial. Defendant further alleged that plaintiff was drunk and had never gone on duty the night of the explosion; and that this alleged drunkenness with his alleged lighting of the stove was the sole proximate

cause of the explosion. Defendant further pleaded that plaintiff had not sustained his injuries while in the performance of his employment; denied that it had furnished the house to plaintiff in connection with his employment, or that it was used in the performance of his duties as a pumper; and that if plaintiff returned to the house to change shoes, it was for his own personal comfort. It is further the contention of defendant in pleading, in evidence offered in support thereof and under propositions advanced on this appeal, that plaintiff was renting the house and using same for his living quarters to cook and sleep in, and the relationship of landlord and tenant existed between them as to the house. And under such relationship defendant was under no legal duty to furnish plaintiff, a tenant, a pressure regulator or odorizer for gas on the line piped into the house by the tenant, which was connected to a pipe line supplied with gas from another company. Assumed risk, contributory negligence, or negligence of a fellow servant was not pleaded as a defense.

▪ Evidence was offered that plaintiff was intoxicated through the afternoon and into the night and was drunk and unable to go and did not go on duty at the midnight shift. Cherry denied that he lighted the lamp or stove in the house. Plaintiff's alleged drunken condition was sharply contested. The jury found that plaintiff "was not intoxicated at the time of the fire." The evidence would have supported a finding either way, and this finding will not be disturbed.

Plaintiff in his testimony claims to have kept in the house light tools and equipment used by him; that from the house one could hear the sounds made by the pumping units and detect any irregularity; that in inclement weather he and another employee had used the house as a shelter and for warmth; that the only other shelter on the lease was the engine houses; that the engine houses were unsafe to remain in at night, in that it was dangerous to have fire around a well flowing and an engine running. Defendant offered no evidence to refute above claim of plaintiff that this house was so used by him for the purposes as detailed, or that the conditions of the premises were otherwise than as described. The evidence is silent as to whether or not defendant agreed to furnish the house for above purpose or that defendant knew it was being so used as a shelter

for this employee. In fact, the evidence gives no details of the original employment or rental agreement, or of any subsequent modification, except the change to a 12-hour shift and an increase in wages.

▪ In response to special issue No. 2, the jury found that plaintiff "at the time of the fire was acting in the course of his employment." The jury was instructed, "By the term 'acting in the course of his employment' is meant some action of the employee with or without the express authority of the employer, but which action is done in furtherance of the employer's business, and for the accomplishment of one or more of the purposes for which the employee is employed." Thus the jury's finding supports plaintiff's claim that at the time of the fire this house on defendant's leasehold was then being used in furtherance of his master's business. Instead of being in the house at the time to get a wrench to adjust machinery, he was there, as he claims, to change to heavier shoes preparatory to his further inspection and adjustment of machinery on the lease. Under this finding and the facts herein detailed, the house formed a part of the premises furnished by defendant to plaintiff in the operation of the leasehold. The fact that plaintiff paid a monthly rental and used it also as his living quarters would not deprive it of this characteristic.

▪ The house being so used by plaintiff in the performance of his duties and in the furtherance of his master's business, and being a part of the premises, the defendant (employer) owed plaintiff (employee) the elementary duty to exercise ordinary care to furnish him a reasonably safe place in which to work, or to not negligently render said house unsafe for him to use in carrying out his work. Texas & N. O. Ry. v. Bingle, 91 Tex. 287, 42 S.W. 971; Missouri, K. & T. Ry. v. Hannig, 91 Tex. 347, 43 S.W. 508; Houston & T. C. Ry. v. Long, Tex.Civ.App., 219 S.W. 212.

The jury found that defendant furnished the gas to the lease-house and the gas pressure was of such nature that gas did at times temporarily cease to flow through the line in the lease-house, and this was negligence and a proximate cause of the injuries. The jury found that defendant "failed to have the odorizing device attached to the gas line going to the lease-house in such condition that the gas supply-

ing the house at the time would have a distinctive odor," and this was negligence and a proximate cause of the injuries. It is upon above findings that plaintiff claims defendant negligently failed to provide him with a safe place to work, and upon this he predicates a right of recovery. The evidence amply supports the finding that the gas pressure fluctuated so that at times it temporarily ceased to flow and caused the pumps to stop and· the fire under the heating unit to go out. This condition of the gas pressure was well known to plaintiff, an experienced oil field worker for forty years. He knew that the fire in his stove had gone out a number of times because of this condition. He did not report the ·condition. Defendant's other employee, Cherry, knew of the irregular flow of gas. Defendant's superintendent visited the lease ·every day. Such irregular pressure existed during all the above period of time.

The evidence is not clear when the odorizer was attached to the line. There was no statutory requirement or Railroad Commission rule at the time which required the odorization of gas used in oil field operations. The evidence is silent whether the odorizer had or had not thrown off a distinctive odor to warn of ·escaping gas prior to the date of the explosion. Plaintiff testified that he noticed no odor when he entered the house on that night, and neither did King who rescued plaintiff from the fire. Plaintiff's son could detect no malodorant about the device the next morning. No contention is made that the Hercules Company billed or collected from plaintiff for the gas used by him. In the set-up, the Hercules Company furnished gas to defendant, and the gas was connected with the house. We are unprepared under all the facts and circumstances above detailed to hold as a matter of law that the defendant was not guilty of negligence in failing to provide plaintiff with a safe place to work. In Hunt v. Robinson, Tex.Civ.App., 55 S.W.2d 166, which is relied upon by defendant, the jury exonerated the defendant from negligence. Further, the negligence here is not grounded upon the construction of the gas line.

In his original petition, upon which plaintiff went to trial, he alleged that defendant had in its employ three or more men in the same class of employment at the time, and defendant was eligible to become a subscriber under the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., but defendant was not a subscriber under such Act and carried no workmen's compensation insurance upon plaintiff. A special exception would have reached such allegation. Pleading such facts in plaintiff's original pleadings does not constitute fundamental error as urged by defendant. Sonken-Galamba Corp'n v. Hillman, Tex.Civ.App., 111 S.W.2d 853; Dial v. Wilke, Tex.Civ.App., 127 S.W.2d 379.

Defendant pleaded that it was at the time of the explosion a subscriber under the Workmen's Compensation Act and carried workmen's compensation upon the plaintiff. Special issue No. 13 inquired of the jury if defendant had in force a policy of insurance under the Workmen's Compensation Act covering plaintiff at the time. This was answered in the negative. Defendant asserts that this was submitting a question of law for determination of the jury, and presents a fundamental reversible error. Under the particular facts of this record, such issue did present a question of law. No exception was taken to its submission. It does not present a fundamental reversible error.

The other propositions advanced have been considered and are respectfully overruled.

The judgment is affirmed.