UNITED EAST & WEST OIL COMPANY V. EDWIN ARTHUR DYER.

No. 7825. Decided April 29, 1942.
Rehearing overruled June 24, 1942.
(162 S. W., 2d Series, 680.)

*C. R. Starnes,* of Gladewater, *Wood & Wood* and *W. Sale Lewis, of Austin,* for petitioner.

An employee who leases or rents a house from his employer for living quarters, at a stipulated rental per month, he not being compelled to live in said house in connection with the

performance of any duty, is a tenant, and his employer, a landlord, with respect to such house. MacKenzie v. Minis, 132 Ga. 323, 63 S. E. 900, 23 L. R. A., N. S. 1003; Miracle v. Stewart, 128 S. W. (2d) 613, 35 C. J. 955, sec. 13.

*Jones & Jones,* of Marshall, for respondent.

It was defendant's duty to furnish plaintiff a safe place to work, which in the present case consisted of a rent house which was used as a place of shelter in bad weather for employees on duty, and the occupancy of which was required of plaintiff in lieu of wages due him, and he was acting in the course of his employment as a pumper, when he stopped in the lease house to change to heavy shoes on a wintry night. Wichita Falls & Okla. Ry. Co. v. Pepper, 134 Texas 360, 135 S. W. (2d) 79; Houston, E. & W. T. Ry. Co. v. McHale, 105 S. W. 1149; Southern Surety Co. v. Shook, 44 S. W. (2d) 425.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

■ This is a common law action by Edwin Arthur Dyer against United East & West Oil Company, a corporation, for recovery of damages for personal injuries sustained by him as the result of a gas explosion in a lease house on one of the company's leases. While it is a common law action the common law defenses of contributory negligence, assumption of risk and negligence of a fellow-servant are not available to the company, since it was eligible as a subscriber under the Workmen's Compensation Law, but failed to subscribe. Art. 8306, Sec. 1; Clevenger v. Burgess, 31 S. W. (2d) 675, (wr. ref.); Eastern Iron & Metal Co. v. McMorrough, 135 S. W. (2d) 750; 29 T. J. p. 100, Sec. 53. The trial court, upon the jury's findings, rendered judgment for Dyer, which was affirmed by the Court of Civil Appeals. 144 S. W. (2d) 989. Since the judgment was upon the findings, the facts upon which they are predicated to which the jury gave credence in returning their verdict, will be stated.

Defendant was engaged in the business of producing oil, and used engines to pump its wells and to pump the oil therefrom into tanks. There were several pumping units on the main line that will be referred to from time to time, through which an outside company furnished defendant gas with which to operate its lease. There was a heater (a joint of seven-inch pipe

eight feet long) on the gas supply line, by means of which the raw product was heated, as it was pumped through, in order to separate the oil and water so that only oil would be run into the tanks. This main gas line ran within about two feet of the house in which the explosion occurred. Plaintiff was employed by defendant on December 1, 1936, as a pumper on one of its leases. He was charged with the duty of operating the pumping unit, the heater referred to, and for the doing of any other work incident to this employment. The gas pressure in this supply line varied and at times became so low as to cause the engines to function improperly, and sometimes the fire under the heater to go out.

At the time plaintiff was employed in December, 1936, he was placed upon full time duty, that is, he was required to be on duty twenty-four hours each day. On October 1, 1937, about two months before his injury, he was placed upon a twelve hour a day service, and was injured while working on his twelve hour shift. His only means of protection from inclement weather during the entire period of employment and the only place available to him while on the lease under either the twenty-four hour a day, or a twelve hour a day, service, was a small two-room bunk house located thereon which defendant told him he could use, deducting from his wages therefor $10.00 per month. Plaintiff bunked in one room and used the other as a kitchen. He could hear from the house the running of the engines and thus know whether they were functioning and whether they were functioning properly. Plaintiff owned a gas stove, which he placed in the kitchen the day he moved in, and, pursuant to the company's permission, connected it with the main supply line at a point a few feet from the lease house, between the heater and pumping machinery and the house. In doing so he used the material which defendant authorized him to use. The gas flowing through the main line (which after connection flowed into the kitchen of the lease house) was odorless, and no safety device for use of the gas in the house was provided. Nor was any precaution taken to remedy the variant gas pressure on the main line of the inconstant flow into the house.

When plaintiff's employment was changed to a twelve hour shift his work was from twelve midnight until twelve noon and no change was made either in the nature of his work or in the manner of its performance. He was simply relieved by a co-worker, a Mr. Cherry, from noon until the following midnight. Plaintiff continued using the house in connection with

his employment on the twelve hour shift just as he used it on the twenty-four hour a day service, and was of course on duty in furtherance of defendant's business during the hours of his shift, whether in the house or outside. Southern Surety Co. v. Shook (wr. ref.), 44 S. W. (2d) 425; Texas Employers' Ins. Ass'n. v. Lawrence (wr. ref.), 14 S. W. (2d) 949. 35 Am. Jur., Master & Servant, p. 609, sec. 172.

Plaintiff was awakened by Mr. Cherry about 11:45 p. m. on the night of the explosion, preliminary to plaintiff's taking over the shift. Cherry told him he had lighted a fire in his stove and had lighted the oil lamp. Plaintiff testified he immediately got up, heard one of the engines functioning improperly, and went out to investigate and put it in order; that he found the gas pressure low at the pumping machinery and the fire out under the heater; that he relighted it, and after getting the engine to running properly, inspected the other equipment, all of which took him about forty-five minutes; that a norther had blown up in the meantime and he returned to the house to take off a pair of low-quartered shoes and put on a heavier pair in which to continue his work outside; that he detected no odor of gas when he came in, but just as he was sitting down to change shoes the explosion occurred ( he supposed) ; at any rate, he remembered nothing more until after he was pulled out of the burning house by a pumper on an adjoining lease. It appeared to be undisputed that the explosion occurred about one o'clock on the morning of November 21st, about an hour after plaintiff was required to go on duty relieving his co-worker, Mr. Cherry.

It was plaintiff's view of the case, as disclosed by his allegations, that the explosion was caused by the presence in the room of gas which accumulated when the gas pressure became low and the fire in the stove went out, and was ignited by the kerosene lamp. He alleged, among other things, that the house in which he was injured was furnished him by respondent *in connection with his employment* and that he used it in his working hours *in connection with his work* and was injured in the course of his employment while so using it. Plaintiff alleged substantially that defendant was negligent in furnishing him an unsafe place in which to work. The Court of Civil Appeals so held and it was upon an assignment alleging the inapplicability of the "safe place" doctrine that the writ was granted. It is unnecessary however to discuss that doctrine, since plaintiff alleged also (in the alternative) that the house was furnished him by defendant *in connection with*

*his employment* in the manner stated above, that is, as an essential factor in the performance of his work; and negligently caused the house to be equipped with gas by a line that did not carry a constant flow of gas, and negligently caused the main line to be attached to a house supply line at a point between the house and the source of supply, thereby permitting the flow of gas to the house to be temporarily halted during the operation of the engines and the heater and thus causing the fire in the stove to go out and gas to accumulate in the room; and also negligently failed to have installed in the house an equiped odorizer to warn plaintiff of the presence in the room of accumulating and accumulated gas. Briefly, plaintiff, in addition to alleging facts upon which to invoke the "safe-place" doctrine, alleged alternatively that defendant equipped with gas in the negligent manner stated, the lease house to be used by him in connection with his work, which, so equipped, proximately caused his injuries.

Defendant alleged in reply that it did not furnish plaintiff the house *in connection with his employment,* but *rented it to him* and that it owed him no duty to install either an odorizer or a pressure regulator, contending in this connection that plaintiff's duties required that he be out of doors on the lease to check the pumps at the wells, the engines, the heater and other equipment; and also that because the house was located several hundred feet from the machinery where plaintiff was required to perform such duties it was not used by him in connection therewith, or in furtherance of defendant's business, but for his own convenience and comfort; that he was not acting within the scope of his employment while in the house, and that the relation created by the working arrangement was that of landlord and tenant and not that of master and servant.

The jury found in answer to the special issues that plaintiff was acting in the course of his employment by defendant when injured; that defendant furnished the gas used by him and that the pressure was such that the gas at times temporarily ceased to flow through the line into the lease house and that defendant's thus furnishing the gas was negligence proximately causing the injuries; and also that it was negligence at the time of plaintiff's injury, and a proximate cause of it, that defendant failed to have an odorizing device attached to the gas line into the lease house in such condition that the gas supplying the house would have a distinctive odor. The jury found also

that the injuries of plaintiff were not the result of an unavoidable accident.

Defendant, after the verdict was brought in, moved the trial court to set it aside in toto and to render judgment in its favor notwithstanding the verdict. The motion was overruled and judgment was rendered on the findings.

We are not confronted, for the reason stated at the outset, with any question of whether plaintiff was injured as a result of his own negligence or whether he assumed any risk incident to his employment or whether his injury was due to the negligence of a fellow workman. There was evidence, as appears from what has been stated, to sustain the jury's findings, which disclose that plaintiff established his allegations set out above, including his allegations that at the time of his injury he was an employee of defendant and was acting in the course of his employment.

It is undisputed that plaintiff was in charge of operations when the explosion occurred. Cherry had finished his shift and had gone. The mere fact, without more, that plaintiff was inside the lease house when injured does not warrant a holding as a matter of law that he had turned aside from furthering his employer's business. That he was employed by defendant as a pumper on the lease and was required to be on duty thereon during the hours of his shift is not disputed. If on duty and in the performance of his work at the time of his injury it is immaterial whether he was so engaged while occupying the relationship of a tenant of his employer or not. In Southern Surety Co. v. Shook, supra, the pumper, who was on full time duty, left the premises before he was killed, and to that extent the case is weaker upon the facts applicable to the governing principle than the present case. The principle upon which it was determined in that case that deceased was killed while on duty in furtherance of his employer's business, is identical with the principle here involved. The opinion says:

"Did Lucien Shook's injuries result from a hazard reasonably inherent in or incident to the conduct of his work as pumper? We think they did. By the terms of his employment, he was on duty twenty-four hours each day, and was housed in a shack belonging to the employer and erected near the pump in order that he might be available for duty at all times.

It would doubtless not be questioned that he was on duty while asleep, or while eating, or tending to other necessary wants. When a man is employed to work at any job, the fact that he is a human, with ordinary human habits and requirements, is necessarily taken into consideration. Had the murder occurred while the employee was providing water or fuel for his own comfort, no question could be made that he was then in the course of his employment in furthering the master's business. * * * It is a matter of universal knowledge that a certain amount of recreation is not only desirable, but absolutely necessary to one's well being and to the proper discharge of his duties. The pumps could be heard for more than a mile away, and the hunting trip (upon which he was lured away from the lease) was to be for only a half mile. * * * It is our conclusion, upon both reason and authority that the employee did not forfeit his claim for compensation by embarking on what he thought to be a wolf hunt near his premises. Lumberman's Reciprocal Ass'n. v. Behnken (112 Texas. 103, 246 S. W. 72); Cassel v. Fidelity & Guaranty Co., 115 Tex. 389, 283 S. W. 127, 46 A. L. R. 1137."

It will be noted that in the Behnken case (a workmen's compensation case) this Court cites, as authority upon the point involved, International & G. N. Ry. Co. v. Ryan, 82 Texas 565, 18 S. W. 219, and other common law cases holding that the employer in such circumstances owes the employee the duty of exercising ordinary care for his safety.

■ It is obvious from what has been stated and the authorities cited that we overrule defendant's contention that at the time of petitioner's injury he was not in the position of an employee at common law, acting in furtherance of his employer's business; and its further contention that petitioner assumed "the risk inherent to the nature of the business being conducted." This disposes of all the assignments of error except the second and third.

■ The proposition presented under the second assignment to the effect that an employee who rents a house from his employer for living quarters, *he not being compelled to live therein in connection with his duties,* is a tenant, requires no discussion in view of the fact that it may be assumed (without deciding) for present purposes that plaintiff was a tenant of defendant. As stated in 35 C. J., Landlord and Tenant, p. 955, sec. 13, and 32 Am. Jur. same title, p. 36, sec. 11, "there is no in-

consistency between the relation of landlord and tenant and that of master and servant." See 39 A. L. R., 1149, in which a qualification of the rule is stated as follows:

"A person may occupy premises as a tenant and yet be a servant of the owner; and where the occupation of the employer's premises is not a mere incident to the service, the principle of landlord and tenant applies, even though the rental is satisfied by service."

It was under the application of the principle stated in the qualification of the rule that it was held in Texas Employers' Ins. Ass'n. v. Sparrow (Com. App.), 134 Texas 352, 133 S. W. (2d) 126, cited by defendant, that the injured employee was not entitled to recover compensation. Plaintiff in the present case is not, as appears from the jury's findings and the facts already stated, within the qualification, as urged by respondent, since his occupancy of the house (under the terms that he remain constantly on duty during the hours of his shift) was necessarily incident to his rendering the service for which he was employed. Plaintiff's cause, as established, is within the general rule applicable at common law between employer and employee, even if it be conceded the relationship of landlord and tenant exists also.

It is unnecessary, in the light of the above holdings, to make further reference to whether the Court of Civil Appeals erred in putting defendant's liability upon the ground that it breached the "safe place" rule, as alleged in the third assignment.

The judgment of the Court of Civil Appeals affirming that of the trial court is affirmed.

Opinion adopted by the Supreme Court April 29, 1942.

Rehearing overruled June 24, 1942.