EXXONMOBIL CORP. f/k/a Mobil Oil Corp., AIG Risk Management, Inc., American Home Assurance Co., American International Group, Inc., Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Pittsburgh, PA, Appellants,

v.

Lonzo KIRKENDALL & Patricia Wagner, Appellees.

No. 04–03–00531–CV.

Court of Appeals of Texas, San Antonio.

Sept. 22, 2004.

Rehearing Overruled Oct. 22, 2004.

David M. Gunn, David J. Beck, Fields Alexander, Thomas E. Ganucheau, Beck, Redden & Secrest, L.L.P., Houston, Ben Taylor, Fulbright & Jaworski L.L.P., Robert B. Wellenberger, Thompson, Coe, Cousins & Irons, L.L.P., Dallas, Greg Smith, Ramey & Flock, P.C., Tyler, Robert Q. Keith, Keith & Weber, P.C., Johnson City, for appellants.

John G. Werner, Curtis W. Leister, Glen W. Morgan, Bob Wortham, Reaud, Morgan & Quinn, L.L.P., James M. Harris, Jr., Harris, Lively & Duesler, L.L.P., Lipscomb Norvell, Jr., Beckenstein, Norvell & Nathan, L.L.P., George E. Bean, Chambers, Templeton, Cashiola & Thomas, L.L.P., Beaumont, Harvey Ferguson, Chaves, Gonzales & Hoblit, L.L.P., San Antonio, for appellees.

Sitting: PAUL W. GREEN, Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

### ON APPELLEE'S MOTION FOR REHEARING

Opinion by SANDEE BRYAN MARION, Justice.

In an opinion and judgment dated July 7, 2004, we reversed the trial court's judgment in favor of appellees, Lonzo Kirkendale and Patricia Wagner, and rendered a take-nothing judgment in favor of appellants. The appellees filed a motion for rehearing in which they assert rendition was improper and, instead, this court should have remanded the cause for further proceedings on certain "pretermitted" causes of action. Appellants filed a response in which they objected to appellees' requested relief. We agree with appellees and accordingly grant the motion for rehearing. Therefore, we vacate our earlier judgment, withdraw our earlier opinion, and issue this opinion and judgment in their place.

Appellants (hereinafter "Mobil")[1] appeal from the trial court's judgment in favor of appellees, Lonzo Kirkendall and Patricia Wagner. At trial, appellees argued Mobil committed fraud on its employees by falsely claiming it had genuine workers' compensation insurance. The jury agreed, and based on the jury's findings, the trial court determined Mobil was not a sub-

1. Appellants consist of two different groups:
 *The Mobil Parties:*
 Mobil Oil Corp. (the employer)
 Mobil Corp. (the employer's parent company)
 *Mobil's workers' compensation insurance carriers:*
 Forum Insurance Company (hereinafter "Forum") (not subject to this appeal)
 National Union Fire Insurance Company of Pittsburgh (hereinafter "National Union")
 American Home Assurance Company
 The Insurance Company of the State of Pennsylvania (hereinafter "ICSOP")
 AIG Risk Management
 American International Group, Inc. (a parent company, hereinafter "AIG")
 Appellees also sued Glenda Matous and Robert Gronwaldt, representatives of AIG who handled Mobil's workers' compensation claims, individually and as agents of Mobil. The trial court did not enter judgment against them, therefore, they are not parties to this appeal.

scriber under the Texas Workers' Compensation Act (the "TWCA"). Further, the trial court concluded the TWCA's exclusive remedy provision did not bar appellees' common-law negligence claims. The jury found that Mobil's negligence proximately caused appellees' injuries, and awarded appellees actual and exemplary damages for their work-place injuries. However, because (1) Mobil proved its subscriber status as a matter of law and (2) appellees' fraud claims are immaterial to that status, we reverse and render a take-nothing judgment in favor of appellants.

## BACKGROUND

The underlying litigation began in 1992 in the 58th Judicial District Court of Jefferson County. The litigation originally proceeded as a class action suit, but following the trial court's decertification of the class, it ultimately became a mass tort case with hundreds of named plaintiffs. Appellees Kirkendall and Wagner are the first two plaintiffs to have their cases tried, which involved injuries that occurred in the course and scope of appellees' employ-

ment while working at Mobil's factory in Beaumont, Texas.[2] Appellees claimed no-fault workers' compensation benefits for their alleged injuries and received workers' compensation benefits for all uncontroverted claims. Subsequent to receiving their workers' compensation awards, appellees brought this suit seeking the difference between the workers' compensation benefits they received and the amounts they alleged they could have received under the common-law. Appellees alleged Mobil deprived them of their common-law claims by falsely representing that it was a subscriber to the TWCA, and thus not entitled to the exclusive remedy provision. In addition to Mobil, appellees also named as defendants Mobil's insurance carriers during the years appellees were injured. During those years, Mobil obtained its workers' compensation insurance from several different companies. Pre–1970 through 1981, Mobil's insurer was Forum; from 1982 through 1991, Mobil's insurer was National Union; in 1992, Mobil's insurer was American Home Assurance Company; and, in 1993, Mobil's insurer

---

2. In 1988, Kirkendall claimed workers' compensation benefits from Mobil's insurance carrier, National Union, for an operation on his carpal tunnel syndrome. The insurance carrier did not controvert the claim and paid Kirkendall his benefits. In 1991, Kirkendall sought additional benefits for a general injury to his body as a result of the carpal tunnel syndrome. However, National Union controverted this claim. The Texas Workers' Compensation Commission (the "TWCC") denied his claim and Kirkendall appealed. Kirkendall's third and final claim involved an injury to his elbow, which he sustained in 1993. He claimed workers' compensation benefits from Mobil's insurance carrier, ICSOP. ICSOP did not controvert the claim and Kirkendall received his benefits. In 1984, Wagner claimed workers' compensation benefits from National Union for an injury she sustained to her finger. National Union did not controvert the claim and paid her workers' compensation benefits. In 1988, Wagner underwent

surgery for carpal tunnel syndrome. She did not file a claim against National Union until 1993. National Union controverted the claim and the TWCC entered an award from which both National Union and Wagner appealed.

Because the appellees' injuries occurred in different years, the period of time involved in this litigation spans two separate workers' compensation systems. The Legislature codified the old act, adopted in 1914 and repealed in 1991, in the Texas Revised Civil Statutes Annotated articles 8306 et seq. The old act continues to govern claims for pre–1991 injuries. See Acts 1989, 71st Leg., 2nd C.S., Ch. 1, § 17.18(c),(d). The Legislature codified the current system in the Texas Labor Code sections 401 et seq. Any differences between the two acts are not material to this appeal. In addition, neither party argues the differences between the systems are controlling. Therefore, we will make all remaining references to the TWCA using the Texas Labor Code.

was ICSOP. The latter three insurers are members of the American International Group of Companies.

The trial court divided the trial into two parts. The first phase of the trial dealt with the issue of Mobil's subscriber status and appellees' fraud claims. During the first phase, appellees argued that, even though they received workers' compensation benefits, Mobil deprived them of their right to bring suit under the common-law by fraudulently misrepresenting to them that it had "genuine" workers' compensation insurance when it in fact did not. Appellees also argued that Mobil and its insurance carriers violated certain insurance regulations and that these violations caused Mobil to forfeit its subscriber status. Mobil argued that it had valid workers' compensation insurance, and therefore, the workers' compensation system's exclusive remedy provision barred appellees' claims. At the conclusion of the first phase of the trial, the jury answered affirmatively that Mobil committed fraud on appellees. In accordance with the jury's answers, the trial court's order stated that Mobil did not have "genuine" workers' compensation insurance in place at the time of the injuries and as a result, Mobil was not entitled to the exclusive remedy provision. Based on this conclusion, the trial court proceeded with the second phase of the trial, which focused on appellees' on-the-job injuries. At the conclusion of the second phase, the jury awarded appellees both actual and exemplary damages for their injuries. Appellants filed a motion to disregard the jury's findings and a motion for judgment n.o.v., arguing that at all times, it was a subscriber. The trial court denied both motions and entered judgment in favor of appellees. This appeal by Mobil ensued.

## STANDARD OF REVIEW

■■■ Mobil argues that because it proved its subscriber status as a matter of law, the trial court erred in denying its motion for judgment n.o.v. We treat the determination of an employer's status as a subscriber as a question of law. *See United E. & W. Oil Co. v. Dyer,* 144 S.W.2d 989, 992 (Tex.Civ.App.-Texarkana 1940), *aff'd,* 139 Tex. 318, 162 S.W.2d 680 (1942). We review questions of law using a *de novo* standard of review. *See Mitchell Energy Corp. v. Ashworth,* 943 S.W.2d 436, 437 (Tex.1997). Further, a trial court may render judgment n.o.v. when it could have properly granted a directed verdict. TEX.R. CIV. P. 301; *Fort Bend County Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 394 (Tex.1991). Therefore, the trial court should grant a motion for judgment n.o.v. when the evidence is conclusive and one party is entitled to judgment as a matter of law. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227–28 (Tex.1990); *Quaker Petroleum Chems. Co. v. Waldrop,* 75 S.W.3d 549, 553 (Tex.App.-San Antonio 2002, no pet.).

## SUBSCRIBER STATUS

■ We must first determine if Mobil was a subscriber when appellees sustained their injuries at work. Mobil alleges it was a subscriber at all times during appellees' injuries thereby precluding their common-law claims. In addition, Mobil contends the jury's fraud findings are immaterial to its status as a subscriber.

■■ A subscribing[3] employer is "... a person who makes a contract of hire,

---

**3.** When the Legislature codified the TWCA into the Labor Code, it deleted the term "subscriber" from the TWCA and expanded the definition of "employer" to "a person who makes a contract of hire, that employs one or more employees, and that has workers' compensation insurance coverage." *See Brown v. Aztec Rig Equip., Inc.,* 921 S.W.2d 835, 840

employs one or more employees, and has workers' compensation insurance coverage." TEX. LAB.CODE ANN. § 401.011(18) (Vernon Supp.2004). "An employer may obtain workers' compensation insurance coverage through a licensed insurance company or through self-insurance as provided by this subtitle." *Id.* at § 406.003 (Vernon 1996). Therefore, in order for an employer to satisfy its burden of establishing its status as a workers' compensation subscriber, it must prove that, at the time its employees sustained their injuries, it had workers' compensation insurance in effect from an insurance company authorized to write workers' compensation insurance in the State of Texas. *See Martinez v. H.B. Zachry Co.,* 976 S.W.2d 746, 748 (Tex.App.-Houston [1st Dist.] 1998, pet. denied); *see also Patterson v. Mobil Oil Corp.,* 335 F.3d 476, 488 (5th Cir.2003). In addition to obtaining authorized insurance, the TWCA requires an employer to notify its employees whether it has workers' compensation insurance. *See* TEX. LAB. CODE ANN. § 406.005. "Employees of subscribing employers may choose to opt out of the system and retain their common-law rights in the event they are injured on the job." *Lawrence v. CDB Servs., Inc.,* 44 S.W.3d 544, 552 (Tex.2001); TEX. LAB.CODE ANN. § 406.034(b). However, the exclusive remedy for an employee who does not opt out is the recovery of workers' compensation benefits for personal injuries sustained in the course of employment. TEX. LAB.CODE ANN. § 408.001(a). Here, there is no dispute that Mobil provided notice to its employees and neither of the appellees opted out of the system. Therefore, if Mobil was a subscriber, the TWCA's exclusive remedy provision bars appellees common-law negligence claims. *See id.*

(Tex.App.-Houston [14th Dist.] 1996, writ denied). For purposes of this appeal, we will

In order to prove its subscriber status, Mobil offered (1) a copy of the policies Mobil had obtained from National Union that were in effect when Wagner sustained her injuries in 1984 and 1988 and (2) a copy of the policy Mobil had obtained from ICSOP that was in effect when Kirkendall sustained his injuries in 1993. Mobil also offered into evidence certificates, with supporting affidavits, from the Texas Commissioner of Insurance stating National Union and ICSOP had authority "to transact the business of ... workers' compensation ... insurance within the State of Texas." In response to this showing, appellees stipulated that both insurance companies were authorized insurers in the State of Texas. Therefore, we conclude Mobil's evidence established, as a matter of law, that it had insurance from an authorized insurance company and, accordingly, Mobil complied with the statutory requirements to become a subscriber as a matter of law under the TWCA.

### JURY'S FRAUD FINDINGS

On appeal, appellees argue that while Mobil presented proof of insurance policies, those policies themselves were merely "sham" contracts, and therefore, not valid. Appellees argue the contracts were a sham because Mobil committed fraud by: (1) failing to transfer the risk of loss to an insurer; (2) allowing its employees to adjust the claims of other Mobil employees; and (3) representing to its employees that Mobil had "genuine" workers' compensation insurance when it did not. Therefore, according to appellees, Mobil's fraud caused it to forfeit its status as a subscriber to the TWCA. We disagree. Instead, as discussed below, we believe the jury's fraud findings are immaterial to an em-

use the term "subscriber" for the sake of uniformity.

ployer's subscriber status under the TWCA.

## Effect of Failure to Transfer Risk of Loss on Mobil's Subscriber Status

■ Appellees first argue that Mobil forfeited its subscriber status because it structured its workers' compensation program through a variety of side agreements with its insurance carriers in a way that failed to transfer the risk of loss to the carrier. Appellees contend that Mobil engaged in a cash-flow retrospective plan whereby Mobil had the insurer file a conventional retrospective rated insurance policy with the state, but it did not actually pay the premium indicated by the policy. Instead, Mobil payed a fraction of that premium to cover the insurer's expected losses paid, expenses, insurance risk premium, and premium taxes. Mobil also issued letters of credit to the insurer for the difference between the conventional premium and the amount actually paid. Mobil reinsured the insurer's risk through an offshore subsidiary. Therefore, Mobil and its reinsurance subsidiary became the true insurers of the risk associated with Mobil's workers' compensation program. Appellees argue that because this alleged scheme was pervasive throughout the process and not simply a few random occurrences, the side agreements were the real contracts, making the actual insurance policies sham contracts. Appellees assert that because Mobil and its insurers had a sham contract between them, appellees, as third parties, are entitled to deny the existence of the policies.

■ Mobil argues that this alleged plan did not affect its subscriber status because, under Texas law, the side agreements are immaterial. We agree. The validity of a workers' compensation insurance policy is an issue of law judged from the policy itself. *See Tankersley v. Durish,* 855 S.W.2d 241, 247–48 (Tex.App.-Aus-

tin 1993, writ denied). The mere presence of an illegal side agreement does not invalidate a policy. *Id.; Associated Employer Lloyds v. Dillingham,* 262 S.W.2d 544, 546 (Tex.Civ.App.-Fort Worth 1953, writ ref'd). When the policy does not incorporate the illegal agreement, but instead is apart from it, the policy itself is valid. *Brookshire Grocery Co. v. Bomer,* 959 S.W.2d 673, 676 (Tex.App.-Austin 1997, pet. denied). Further, the Texas Insurance Code provides "... any contract or agreement not written into the application of the policy shall be void and of no effect ..." TEX.REV.CIV. STAT. ANN. Insurance Code art. 5.57 (Vernon 1981). Further, any side agreement to a valid and enforceable workers' compensation policy that violates a statutory or regulatory requirement is invalid and ineffective. *Brookshire,* 959 S.W.2d at 676; *see also* TEX.REV.CIV. STAT. ANN. Insurance Code art. 5.57. Therefore, while Mobil's plan most likely violates an administrative rule, nothing in Texas law provides that this violation causes an employer to forfeit its subscriber status. *See Patterson,* 335 F.3d at 489–90, n. 13 (noting that even though the State Board of Insurance has formally forbidden such a plan, the use of this arrangement did not affect an employer's status as a subscriber). Because Mobil's alleged cash-flow retrospective plan is not incorporated into any of its policies, the policies themselves remain valid. *See Patterson,* 335 F.3d at 490–91. Therefore, we conclude the jury's finding that Mobil failed to transfer the risk of loss for its workers' compensation claims to an authorized insurance carrier is immaterial to Mobil's subscriber status.

## Claims Adjusted by Employees and its Effect on Mobil's Subscriber Status

■ Appellees next argue that Mobil forfeited its subscriber status by impermissibly allowing its employees to adjust

the workers' compensation claims of other employees. Appellees base their arguments on the nature of the relationship between Mobil and its insurance carriers. Because Mobil's insurance carriers were subsidiaries of Mobil, appellees argue that the insurance carriers' agents were acting as Mobil employees.

An employer may not dictate the methods by which, and the terms on which, a claim is handled and settled. 28 TEX. ADMIN. CODE § 65.10(1)(I) (2003). The TWCC deems such conduct as unethical or fraudulent and the Commission may bar a person who is guilty of unethical or fraudulent conduct from practicing before the Texas Board of Insurance. *Id.* at § 65.5. Appellees assert that Mobil's use of its own employees to handle claims violates the Commission's regulatory rule, which amounts to fraud. However, appellees do not point to any case law supporting their argument that this violation precluded Mobil from maintaining its subscriber status. Further, nowhere in the workers' compensation system does such a violation result in an employer forfeiting its subscriber status.

Instead, the workers' compensation system creates a level of certainty for employees by ensuring that an employer's violation of the State's various administrative rules and regulations will not deprive workers of the benefits under the system. *See e.g. Larchmont Farms, Inc. v. Parra,* 941 S.W.2d 93, 95 (Tex.1997) (concluding that Texas has an interest in maintaining a stable workers' compensation system). Throughout the system's provisions dealing with various violations under the TWCA or other rules, the act imposes only administrative and civil penalties or a bar from practicing before the Commission. *See e.g.* TEX. LAB.CODE ANN. § 415.001 *et seq.;* 28 TEX. ADMIN. CODE §§ 65.5, 65.10. Therefore, even though Mobil's practices

may have violated certain administrative rules, nothing in Texas law indicates, or supports, the conclusion that those violations caused Mobil to forfeit its subscriber status. *See Patterson,* 335 F.3d at 492. Accordingly, we conclude that the jury's finding that Mobil committed fraud by allowing its employees to adjust the claims of other employees is immaterial to Mobil's subscriber status.

**"Genuine" Insurance**

 Finally, appellees argue that Mobil did not have "genuine" workers' compensation insurance between the years of 1965 to 1981 because Mobil obtained insurance from its subsidiary, Forum. Appellees argue this amounted to nothing more than self-insurance. Further, appellees argue that between the years of 1982 to 1993, Mobil did not have "genuine" insurance because it reinsured its insurance coverage through several financial devices. Although appellees repeatedly referred to "genuine" workers' compensation insurance during the trial, submitted a question to the jury on "genuine" insurance, and argued before this court that Mobil's policies were not "genuine," Texas law makes no such distinction, or defines, workers' compensation insurance as "genuine" insurance. Appellees conceded during arguments before this court that they use the term "genuine" to mean "legitimate" insurance policies. However, the determination of the policies' "genuineness" or legality is a question of law for the court to decide. *See Tankersley,* 855 S.W.2d at 247–48. By statute, an employer either obtains insurance from an authorized insurance carrier or it does not. If the employer does not obtain the policy from an authorized insurer, it does not have insurance for purposes of the TWCA. Here, Mobil complied with the statutory requirements by obtaining policies from authorized insurers in the State of Texas. Therefore, because Mobil

complied with the statute and the genuineness of a workers' compensation insurance policy is a question of law, we conclude the jury's finding that Mobil did not have "genuine" insurance is immaterial to Mobil's subscriber status.

## CONCLUSION

We believe that appellees' fraud complaints are, in reality, allegations of regulatory violations and as such, the task of assessing the appropriate sentence for such violations lies with the agency responsible for the policing of the workers' compensation system. However, for the purposes of determining whether the TWCA's exclusive remedy provision bars appellees' common-law claims, we conclude appellees' claims of fraud are immaterial to Mobil's subscriber status. Because Mobil satisfied the statutory requirements to become a subscriber, it is entitled to the exclusive remedy provision of the TWCA. *See* TEX. LAB.CODE ANN. § 408.001(a); *Reed Tool Co. v. Copelin,* 689 S.W.2d 404, 406 (Tex.1985). Therefore, appellees' claims for common-law negligence are barred as a matter of law.

During the first phase of trial, in addition to their negligence claims, appellees also alleged in the alternative bad-faith claims-handling practices and appeals from the TWCC's denial of a claim by Kirkendall and a partial award in favor of Wagner. The trial court and the parties all agreed that if Mobil was found not to be a subscriber, then phase one of the trial would proceed on appellees' negligence claims. On the other hand, if Mobil was found to be a subscriber, then phase one would proceed on the alternate causes of action. The trial court signed a pre-trial order specifically setting forth the manner in which trial would proceed.

Because the jury determined Mobil was not a subscriber, the alternate causes of action were never tried. Our reversal of the trial court's judgment and our determination in Mobil's favor on the issue of its subscriber status entitles appellees to a remand to the trial court for further proceedings as set forth in the trial court's pre-trial order. Accordingly, we reverse the trial court's judgment and remand the cause to the trial court for further proceedings.