**BELDON ROOFING & REMODELING CO., Appellant,**

v.

**SAN ANTONIO WATER SYSTEM, Appellee.**

**No. 04–94–00344–CV.**

Court of Appeals of Texas, San Antonio.

March 22, 1995.

W. Wendell Hall, Renee A. Forinash, Fulbright & Jaworski, L.L.P., San Antonio, for appellant.

Russell S. Johnson, Davidson & Troilo, P.C., San Antonio, for appellee.

Before CHAPA, C.J., and STONE and GREEN, JJ.

## OPINION

CHAPA, Chief Justice.

Appellant, Beldon Roofing & Remodeling, Inc., appeals from a summary judgment arising out of a declaratory judgment action in which the trial court was asked to interpret a section of the Texas Workers' Compensation Act (The Act). On cross-motions for summary judgment, the trial court denied Beldon's motion and granted appellee San Antonio Water System's (SAWS) motion. We affirm.

The section of the Act at issue provides:

§ 406.096. Required Coverage for Certain Building or Construction Contractors.

(a) A governmental entity that enters into a building or construction contract SHALL REQUIRE THE CONTRACTOR TO CERTIFY IN WRITING THAT THE CONTRACTOR PROVIDES WORKERS' COMPENSATION INSURANCE COVERAGE for each employee of the contractor employed on the public project.

(b) Each subcontractor on the public project shall provide such a certificate relating to coverage of the subcontractor's employees to the general contractor, who shall provide the subcontractor's certificate to the governmental entity.

(c) A contractor who has a contract that requires workers' compensation insurance coverage MAY PROVIDE THE COVERAGE THROUGH A GROUP PLAN OR OTHER METHOD SATISFACTORY TO THE GOVERNING BODY OF THE GOVERNMENTAL ENTITY.

(d) The employment of a maintenance employee by an employer who is not engaging in building or construction as the employer's primary business does not constitute engaging in building or construction.

TEX.LAB.CODE ANN. § 406.096 (Vernon 1995) (formerly article 8308, § 3.23(c) of the Texas Workers' Compensation Act) (emphasis added); see Act of December 13, 1989, 71st Leg., 2nd C.S., ch. 1, § 3.23, 1989 Tex.Gen.Laws 22, repealed by Acts of 1993, 73rd Leg., R.S., ch. 269, § 5, 1993 Tex.Gen.Laws 1273.

Beldon, pursuant to the Uniform Declaratory Judgments Act, TEX.CIV.PRAC. & REM. CODE ANN. §§ 37.001–.011 (Vernon 1988),

asked the trial court for an interpretation of this section and a declaration that this provision should not be interpreted to deny Beldon a building or construction contract based solely on Beldon's nonsubscriber status under the Act. The trial court held that the disputed article requires governmental entities to contract only with contractors who participate in the state-created workers' compensation system.

Beldon chose to "opt out" of the Texas Workers' Compensation system and created its own compensation system that provides benefits to its employees who are injured on the job. According to Beldon, its benefits equal or surpass those mandated by the Act. Beldon bid on a reroofing job for SAWS, a political subdivision of the State of Texas. Although Beldon entered the lowest bid, SAWS did not complete its evaluation of the bid after it determined that Beldon did not have workers' compensation coverage "as required by State law." In two points of error, Beldon contends that the trial court erred in denying its motion and in granting SAWS's motion because, as a matter of law, the challenged article allows governmental entities to contract with a nonsubscriber of the Act if the contractor provides similar coverage through a method that is satisfactory to the governmental entity.

 Because this appeal involves the proper construction of a statute, it is a question of law that this court reviews de novo. *Johnson v. City of Ft. Worth*, 774 S.W.2d 653, 656 (Tex.1989). The purpose of statutory construction is to give effect to the intent of the legislature. *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex.1993). We presume that the legislature intended that the statute be constitutional, that the entire statute be effective, that the results be just and reasonable, that the statute be capable of execution, and that the public interest be favored over private interests. TEX.GOV'T CODE ANN. § 311.021 (Vernon 1988); *Linick v. Employers Mut. Casualty Co.*, 822 S.W.2d 297, 301 (Tex.App.—San Antonio 1991, no writ).

Beldon argues that the legislative intent embodied in the Act is that employers should be able to elect whether to subscribe to the Act, pointing out that participation has never been mandatory. *See* TEX.LAB.CODE ANN. § 406.002 (Vernon 1995). While it is certainly true that the legislature intended to allow employers to opt out of the system, its primary, indeed overriding, intent in enacting the Workers' Compensation Act was to benefit and protect injured employees and to expedite the settlement of meritorious claims. *See Stott v. Texas Employers Ins. Ass'n*, 645 S.W.2d 778, 780 (Tex.1983); *Hodge v. BSB Invs., Inc.*, 783 S.W.2d 310, 312 (Tex.App.—Dallas 1990, writ denied). Furthermore, Section 406.002 allows election of the Act with one notable exception: *public employers* may not opt out of the Act.

Therefore, as we attempt to ascertain the specific legislative intent in enacting Section 406.096 of the Act, we must consider not only the elective nature of Section 406.002, as urged by Beldon, but also the mandatory exception as it relates to the provision in question. SAWS urges that the "public employer" exception bears directly on the legislative reasoning in enacting Section 406.096: a private contractor who works on public contracts should provide the same required coverage for its workers as the public entity contracting with the private employer provides for its workers. We find this argument to be of considerable merit.

Turning to an analysis of Section 406.096, Beldon asserts that the plain language of subsection (c) allows nonsubscribing contractors to contract with governmental entities if the contractor provides its employees with a workers' benefit system that is satisfactory to the governing body of the entity. * Beldon contends that the phrase, "group plan or other method" can only be interpreted as authorizing alternative insurance plans. Because the legislature has included subsection (c), Beldon continues, we must give it effect; we cannot ignore it.

 A court must presume that every word in a statute was used for a purpose, and should not ignore language unless it is necessary to give effect to the legislative intent. *Roberts v. Southwest Tex. Methodist Hosp.*, 811 S.W.2d 141, 144 (Tex.App.—San Antonio 1991, writ denied); *see Chevron Corp. v. Red-*

*mon,* 745 S.W.2d 314, 316 (Tex.1987) (a court must give effect to all of the words in a statute, if possible, treating none as surplusage). Words and phrases are to be read in context and construed according to the rules of grammar and ordinary usage. TEX.GOV'T CODE ANN. § 311.011(a) (Vernon 1988). When words and phrases are given a particular meaning by legislative definition, however, they are to be construed accordingly. *Id.* at (b).

The phrase "workers' compensation insurance coverage" is statutorily defined as "(A) an approved insurance policy to secure the payment of compensation; (B) coverage to secure the payment of compensation through self-insurance as provided by this subtitle; or (C) coverage provided by a governmental entity to secure the payment of compensation." TEX.LAB.CODE ANN. § 401.011(44) (Vernon 1995). This definition thus restricts the methods by which an employer may obtain "workers' compensation insurance coverage." Beldon admits that its own plan falls outside the scope of Section 401.011(44).

 Subsection (a) of the disputed statute provides that the governmental entity entering into a construction contract *"shall require* the contractor to certify ... that the contractor provides *workers' compensation insurance coverage...."* (emphasis added). This language is mandatory and unambiguous. In seeming conflict, subsection (c) allows that the contractor "may provide the coverage through a group plan or other method satisfactory to the governing body of the governmental entity." When sections of a statute are conflicting, a court must try to construe those sections in a manner that avoids conflict while giving each provision effect. *Bexar County v. North East Indep. Sch. Dist.,* 802 S.W.2d 854, 857 (Tex.App.— San Antonio 1990, writ denied). Beldon urges that subsection (c) can only be interpreted as authorizing alternative insurance plans which are not statutorily defined coverage. Conversely, the trial court found that the phrase "other method satisfactory" means other workers' compensation insurance satisfactory to the governing body of the governmental entity. We agree. For example, the broadly worded term "group

plan" can be reconciled easily with the requirement of "workers' compensation insurance." Article 5.57A of the insurance code, "Group Purchase of Workers' Compensation Insurance," provides for group plans in which two or more business entities join together to purchase workers' compensation insurance policies that cover each entity that is part of the group. TEX.INS.CODE ANN. art. 5.57A (Vernon Supp.1995). Beldon's interpretation, on the other hand, would give full effect only to subsection (c) while rendering subsection (a) nugatory. The trial court's interpretation gives both paragraphs effect and allows a reading of the statute as a whole, thereby resolving the apparent conflict.

Beldon next argues that its construction of the statute results in fair, rational, and reasonable consequences. Because government contracts are essential to the success of many businesses, Beldon contends, the trial court's reading will have unwelcome effects on similarly situated businesses. The purpose of the Act, specifically the provision in question, however, is to assure protection for workers on publicly funded government construction projects. One factor we must consider in determining legislative intent is the presumption that the legislature favors public interests over private interests. TEX.GOV'T CODE ANN. § 311.023(7) (Vernon 1988); *Elick v. Woods,* 859 S.W.2d 454, 461 (Tex.App.— Beaumont 1993, writ denied). Sound reasons exist for requiring statutory workers' compensation coverage on public works. Construction work, by its nature, is dangerous, and injuries are commonplace. Indeed, subsection (d) of Section 406.096 makes a distinction between "maintenance" workers and building or construction workers by providing that the "employment of a maintenance employee by an employer who is not engaging in building or construction as the employer's primary business does not constitute engaging in building or construction." TEX. LAB.CODE ANN. § 406.096(d) (Vernon 1995). We understand this provision to mean that an employer who provides primarily maintenance services to a governmental entity is not required to provide statutory workers' compensation coverage, unlike an employer providing construction services. Thus, this

subsection reinforces our reading of the statute as a whole as requiring statutory workers' compensation coverage for construction workers. In conclusion, it is reasonable to assume that the legislature intended to make certain that workers on public construction projects were adequately protected, and the most effective way to assure uniform protection was to enact Section 406.096 requiring statutory workers' compensation coverage.

We must also consider the burden that a permissive interpretation of the disputed regulation would place on the governmental entity. As a practical matter, charging the entity with analyzing a wide range of insurance options places an undue burden on it and increases the risk that workers will not be adequately covered. Moreover, subsection (b) of Section 406.096 provides: "Each subcontractor on the public project shall provide such a certificate relating to coverage of the subcontractor's employees to the general contractor, who shall provide the subcontractor's certificate to the governmental entity." TEX.LAB.CODE ANN. § 406.096(b) (Vernon 1995). Thus, under Beldon's reading, the possibility exists that on a large construction project each subgroup of workers (*e.g.,* roofers, plumbers, electricians, carpenters) would have widely differing coverage, and the governmental entity would be faced with the evaluation of not one, but many, alternate plans. It is more reasonable to assume that the legislature intended instead for workers on public projects to have uniform coverage.

We realize that Beldon does not ask that we interpret Section 406.096 as requiring governmental entities to consider nonsubscribers; only that the entities have the discretion to consider nonsubscribing contractors' bids if they so desire. Although this appears to be a plausible alternative, we do not believe that the legislature intended such a result, in light of the above analysis. The result we reach is fair and rational, and the consequences are reasonable. The legislature, through Section 406.096, has assured that employees of private contractors on public works projects are adequately and uniformly protected to the same degree as are public employees. Businesses remain free to opt out of the workers' compensation system and devise their own benefits systems; if they wish to compete for publicly funded projects, however, it is reasonable to require that their employees be covered by a statutorily approved workers' compensation policy.

Finally, we note that the Attorney General of Texas agrees with our conclusion that Section 406.096 requires statutory workers' compensation coverage for privately employed workers on public projects. *See, e.g.,* Op.Tex.Att'y Gen. No. DM–241 (1993) ("Truckers hauling materials on and onto Texas Department of Transportation construction sites are required [by Section 406.096] to be covered by workers' compensation insurance."); Op.Tex.Att'y Gen. No. LO–60 (1992) ("A contractor on a building or construction project with a political subdivision of the state is required by [Section 406.096] of the Workers' Compensation Act to obtain workers' compensation insurance coverage for its employees employed on the project."). The Attorney General stated: "In our opinion, the legislature has indicated an intent in [Section 406.096] that all contract workers on the public works projects covered by the article have workers' compensation coverage." *Id.*

In conclusion, we hold that, as a matter of law, Section 406.096 of the Texas Labor Code mandates that a governmental entity require proof of workers' compensation coverage as defined in Section 401.011(44) of the Texas Labor Code before accepting bids for public construction projects.

The judgment of the trial court is affirmed.