

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00024-CV

———————————————

ROBERT LANE, Appellant

V.

ODLE, INC., Appellee

---

On Appeal from the 442nd District Court
Denton County, Texas
Trial Court No. 22-8611-442

---

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Robert Lane was injured at work and sued his employer, Appellee Odle, Inc., alleging that Odle had been negligent and was a workers' compensation nonsubscriber under the Texas Workers' Compensation Act (TWCA). *See* Tex. Lab. Code Ann. § 406.033 (explaining that without workers' compensation insurance, an employer may not raise certain defenses to an employee's negligence claim).

In its answer, Odle asserted that Lane had been receiving workers' compensation benefits and raised as affirmative defenses Lane's election of remedies and his exclusive remedy under Labor Code Section 408.001. *See id.* § 408.001(a) ("Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage . . . for . . . a work-related injury sustained by the employee."). Odle moved for a traditional summary judgment under Section 408.001(a), and Lane filed a combined response and cross-motion for a traditional and no-evidence summary judgment in which he insisted that Odle was a TWCA nonsubscriber and that Odle had no evidence that its workers' compensation policy had been approved by the Texas Department of Insurance (TDI).[1]

---

[1]Odle amended its summary judgment motion to include its election-of-remedies defense, but Lane did not amend his response. Because we resolve this appeal on Odle's exclusive-remedy affirmative defense, we need not consider Lane's argument that the trial court could have impermissibly granted Odle's amended motion by default based on his failure to file an amended response. *Cf. Mailloux v. KJ Env't Mgmt., Inc.*, No. 02-20-00059-CV, 2020 WL 6334176, at *2 (Tex. App.—Fort

The trial court granted summary judgment for Odle and denied Lane's cross-motion, and in his two issues on appeal, Lane complains that this was error. Because the record reflects that the trial court did not so err, we overrule both of Lane's issues and affirm the trial court's judgment.

## II. BACKGROUND

### A. Odle's summary judgment arguments and evidence

Odle argued that the TWCA barred Lane's negligence claim because Odle's uncontroverted summary judgment evidence established that Lane was its employee and that he was covered by workers' compensation insurance when he was injured. To support its argument, Odle attached Lane's amended original petition in which Lane alleged—among other things—that on March 15, 2021, when he was injured, he had been "working in the course and scope of his employment" for Odle at a jobsite in Texas. Odle also attached the affidavit of Joseph Greiner, an Odle Service Center Manager, who averred that at the time of Lane's injuries, Lane had worked for Odle and had been covered by workers' compensation insurance under a policy issued to Odle's parent company, SUEZ North America Inc., by Everest Premier Insurance Company (the SUEZ Policy).

---

Worth Oct. 29, 2020, no pet.) (mem. op.) (explaining that a summary judgment motion cannot be granted by default but rather "must stand or fall on [its] own merits" (quoting *McConnell v. Southside ISD*, 858 S.W.2d 337, 342 (Tex. 1993)).

3

In his affidavit, Greiner stated that Odle "is an additional named insured under the SUEZ Policy," and he sponsored page 114 of the Suez Policy as Exhibit 1. He also listed Odle's federal employment ID number (FEIN) and its current and previous business addresses in Muncie, Indiana. Exhibit 1 shows that, effective January 1, 2021, SUEZ North America Inc. was the SUEZ Policy's named insured, with Odle Inc. (identified by its address and FEIN) as a covered location.

Greiner further averred,

The SUEZ Policy provides workers' compensation benefits to Odle's employees in forty (40) states, including Texas, and applies to the workers' compensation laws of those states. A true and correct copy of the Policy's declaration page is attached to this Affidavit as Exhibit 2. The Policy contains numerous Texas amendatory endorsements required by [TDI] and the Texas Labor Code. True and correct copies of these amendatory endorsements are attached to this Affidavit as Exhibit 3.

Finally, the SUEZ Policy contains a Texas classification of operations page establishing that SUEZ/Odle paid workers' compensation insurance premiums for work-related accidents occurring in Texas, including accidents arising from water storage tank operations, the same activity Lane was performing at the time of his work-related injury. A true and correct copy of the Texas classification of operations/premium page of the SUEZ Policy is attached hereto as Exhibit 4.

Greiner's Exhibit 2, the SUEZ Policy's "information page," lists forty states and recites in Section 3.A., "Part One of the policy applies to the Workers Compensation Law of the states listed here: . . . TX . . . ."

Greiner's Exhibit 3, which was the insurance company's notice to "Texas Workers Compensation and Employers Liability Policyholders," states, "Pursuant to

Texas Labor Code § 411.066,[2] Everest Premier Insurance Company is required to notify its policyholders that accident prevention services are available from Everest Premier Insurance Company at no additional charge" and that the insurance company is also "required to provide return-to-work coordination services as required by Texas Labor Code § 413.021 and to notify you of the availability of the return-to-work reimbursement program for employers under Texas Labor Code § 413.022."[3]  It also listed the contact information for TDI's Division of Workers' Compensation (DWC) and stated,

> If Everest Premier Insurance Company fails to respond to your request for accident prevention services or return-to-work coordination services, you may file a complaint with the TDI–DWC in writing at http://www.tdi.texas.gov or mail to:
>
> Texas Department of Insurance
> Division of Workers' Compensation, MS-8,
> 7551 Metro Center Drive
> Austin, Texas 78744-1645.

Exhibit 3 also contained the SUEZ Policy's "TEXAS IMPORTANT NOTICE," which stated that if the insured believed there had been a legal violation related to the workers' compensation policy, it should "file a complaint with [TDI]"

---

[2]Labor Code Section 411.066 states, "Notice that accident prevention services are available to the policyholder from the insurance company must appear in at least 10-point bold type on the front of each workers' compensation insurance policy delivered or issued for delivery in this state."  Tex. Lab. Code Ann. § 411.066.

[3]Labor Code Section 413.021 addresses return-to-work coordination services. Tex. Lab. Code Ann. § 413.021.  Labor Code Section 413.022 addresses a return-to-work reimbursement program for employers.  *Id.* § 413.022.

5

and then listed TDI's 1-800 phone number, its website, an email address (ConsumerProtection@tdi.texas.gov), and a specific mailing address (MC111-1A, P.O. Box 149091, Austin, Texas 78714-9091). The notice page also stated that as to employees with claim issues, "If one of your employees has a problem with a claim, contact [TDI, DWC], Compliance and Investigations," and it listed a different mailing address (MS-8, 7551 Metro Center Drive, Suite 100, Austin, TX 78744), a fax number (512-490-1030), an email address (DWC-ComplianceReview@tdi.texas.gov), and another 1-800 number. Exhibit 3 also contained the "Texas Waiver of Our Right to Recover From Others Endorsement," which stated, "This endorsement applies only to the insurance provided by the policy because Texas is shown in Item 3.A. of the Information Page," and it set a two-percent premium charge for the endorsement. [CR85] Exhibit 3 also included the "Texas Sole Proprietors, Partners, Officers and Others Coverage Endorsement" under Labor Code Section 406.097. *See id.* § 406.097 (addressing coverage of a company's proprietors, partners, or corporate executives). Greiner's Exhibit 4 contained premium information for the policy's Texas coverage, effective January 1, 2021.

Odle also attached an affidavit from Tandy Lyon, a claims examiner for Sedgwick Claims Management Services, Inc., which Lyon stated was "the third-party claims administrator for Everest Premier Insurance Company." Lyon averred that in January 2021, Everest issued the SUEZ Policy with Odle as an additional insured and a policy term of January 1, 2021–January 1, 2022.

6

Lyon further averred that on July 19, 2022, Lane, as one of Odle's employees, "made a claim for workers' compensation benefits under the [SUEZ] Policy arising from work-related injuries he sustained on or about March 15, 2021"; that she was his case's assigned claims examiner; that she had been "adjusting the claim on behalf of Everest pursuant to the terms and conditions of the [SUEZ] Policy"; and that Everest had paid to Lane $92,209.56 in indemnity benefits and $3,330.30 in medical benefits on the claim and would continue to pay him $705 per week until November 8, 2023.

Odle also attached the July 19, 2022 notice of representation Lane's attorney had filed with TDI–DWC, listing Lane's injury date (March 15, 2021) and his DWC claim number. The notice listed Odle as Lane's employer and gave Odle's Muncie, Indiana address.

## B. Lane's response, cross-motion, and summary judgment evidence

In his summary judgment response and cross-motion, Lane asserted that even though he was receiving out-of-state insurance policy benefits, Odle could not use the exclusive-remedy affirmative defense because neither Odle nor SUEZ was a registered subscriber to the Texas Workers' Compensation Insurance program and because Odle could produce no evidence that TDI had approved the SUEZ Policy. Lane relied in part on Labor Code definitions and on a Texas Administrative Code section that became effective December 21, 1987. *See* 28 Tex. Admin. Code § 43.5 (1987) (Tex. Dep't of Ins., Notice That Employer Has Become Subscriber).

To his response and cross-motion, Lane attached his W-2 showing Odle's FEIN; Odle's franchise tax account status, which states "right to transact business in Texas: NOT ESTABLISHED" and that Odle had no effective secretary-of-state registration date; and the same document attached by Greiner as Exhibit 1, showing SUEZ North America, Inc. as the named insured, with Odle as a location and on which he highlighted Odle's Muncie, Indiana address. Lane also attached various documents from TDI:

- A print-out from the TDI–DWC website showing "no results found" when a search was run for Odle's coverage as of March 15, 2021;

- An August 29, 2022 letter from TDI to Lane's attorney that stated, "Insurance Coverage Information request for SUEZ WTS USA, INC. 03/15/2021,"[4] and that "No insurance coverage information concerning the above-referenced subject was found," and an August 29, 2022 TDI Certification of No Records Found, as to SUEZ WTS USA, INC.; and

- An August 25, 2022 letter from TDI to Lane's attorney that stated, "Insurance Coverage Information request for Odle, Inc., date range of: 03/15/2021," and that "No insurance coverage information concerning the above-referenced subject was

---

[4]Like Odle, SUEZ WTS USA INC. is listed on the SUEZ Policy as an additional named insured.

found," and an August 25, 2022 TDI Certification of No Records Found as to Odle, Inc.

Lane did not attempt to controvert the facts set out in Greiner's and Lyon's affidavits or in Greiner's exhibits.

## C. Odle's response to Lane's cross-motion

In response to Lane's cross-motion, Odle complained that Lane's arguments were based on his erroneous open-records request to TDI–DWC for coverage information on SUEZ WTS USA, Inc. instead of SUEZ North America, the named insured of the SUEZ Policy, under which Lane had been receiving workers' compensation benefits. To its response, Odle attached Lane's exhibit pertaining to the TDI–DWC searches for insurance coverage for SUEZ WTS USA, INC. (highlighting the name) and the affidavits and exhibits it had previously filed.

## III. DISCUSSION

In his two issues, Lane argues that the trial court erred by granting summary judgment for Odle and by denying his cross-motion, contending that although Odle offered some evidence of workers' compensation coverage, it failed to discharge its traditional summary judgment burden because it had failed to offer any evidence that its policy had been "approved" by TDI and because it had failed to offer evidence that the insurance carrier was authorized to write workers' compensation insurance in Texas. He also relies on these arguments and Odle's failure to show that it had

9

registered as a subscriber with TDI in support of his no-evidence complaints.[5] Lane contends that Odle should have submitted an affidavit from the insurance company's managing director or a TDI certification of the insurance company's authority to provide workers' compensation insurance in Texas, that Odle should have shown that it had met Administrative Code Section 43.5's insurance coverage notice rule, and that Odle's failure to do either deprived it of the exclusive-remedy affirmative defense.

Odle responds that Lane's arguments fail to raise an inference of no coverage or a fact issue on the exclusive-remedy defense's essential elements and that Lane failed to meet his summary judgment burden by failing to object to or controvert Odle's affidavit evidence.

## A. Standard of review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex.

---

[5]Lane also argues that he made no election of remedies by merely accepting the out-of-state workers' compensation benefits. Based on our disposition of Odle's exclusive-remedy summary judgment ground, we do not reach these arguments. *See* Tex. R. App. P. 47.1.

10

2008). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all elements of that defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c). And "[w]hen both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and determine all questions presented." *Mann Frankfort*, 289 S.W.3d at 848. We should then render the judgment that the trial court should have rendered. *See id.*

## B. The TWCA's framework

"The Texas Legislature enacted the original Workers' Compensation Act in 1913 in response to the needs of workers who, despite a growing incidence of industrial accidents, were increasingly being denied recovery." *In re Poly-Am., L.P.*, 262 S.W.3d 337, 350 (Tex. 2008) (orig. proceeding). The TWCA "ultimately struck a bargain that allows employees to receive []a lower, but more certain, recovery than would have been possible under the common law[]." *SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 642 (Tex. 2015); *see Berkel & Co. Contractors, Inc. v. Lee*, 612 S.W.3d 280, 284 (Tex. 2020) (explaining that a central purpose of workers' compensation is to promote certainty and speed in resolving work-related injury claims and to provide medical and disability benefits without regard to fault of either the injured worker or the employer); *see also Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 439 (Tex. 2012) (recounting the TWCA's history and noting that the amendments from 1989 onward "provide[d for] significantly more meaningful proceedings at the administrative

11

agency level so as to reduce the number and cost of judicial trials, speed up the time for the entire dispute resolution process, and facilitate interlocutory payment of benefits pending final resolution of disputes" through "detailed procedures and penalties for failures of the various interested parties to comply with statutory and regulatory requirements").

Today, the TWCA is "a comprehensive legislative framework that creates a statewide no-fault insurance system for workers injured or killed in the course and scope of their employment." *Tex. Pol. Subdivisions Joint Self-Ins. Fund v. Tex. Dep't of Ins.–Div. of Workers' Comp.*, 681 S.W.3d 491, 493 (Tex. App.—Austin 2023, pet. denied); *see Tex. Mut. Ins. Co. v. PHI Air Med., LLC*, 610 S.W.3d 839, 858 (Tex. 2020) (Bland, J., concurring) ("The [TWCA] is a comprehensive regulatory structure for insurance carriers, employers, employees, health care providers, and others who claim benefits under a workers' compensation policy.").

The TWCA's purpose is to provide employees with certainty that their medical bills and lost wages will be covered if they are injured, *HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 350 (Tex. 2009), but the coverage "is a two-way street," benefitting both employees and employers. *Waste Mgmt. of Tex., Inc. v. Stevenson*, 622 S.W.3d 273, 285 (Tex. 2021). That is, employers who cover their employees benefit from the exclusive-remedy protection under Labor Code Section 408.001(a), and workers who qualify as employees receive compensation for injuries without regard to fault or negligence and without spending the time and litigation expenses inherent in proving

12

fault in a common-law tort claim. *Id.* The supreme court has historically construed the TWCA liberally in favor of coverage based on these reciprocal benefits. *Id.*; *see TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 72, 74, 77–78 (Tex. 2016) (noting "decided bias" for coverage in statutory scheme).

"Unlike workers' compensation laws in every other state, the TWCA allows private Texas employers to choose whether to subscribe to workers' compensation insurance." *Port Elevator-Brownsville v. Casados*, 358 S.W.3d 238, 241 (Tex. 2012). That is, there is no guarantee that an employer will provide workers' compensation for its employees despite public policy's strongly encouraging it. *HCBeck, Ltd.*, 284 S.W.3d at 354. But without such coverage, the employer loses the exclusive-remedy defense. *Id.*

### 1. Section 408.001(a)'s exclusive remedy

Section 408.001(a) provides that recovery of workers' compensation benefits "is the exclusive remedy" against an employer for a work-related injury by "an employee covered by workers' compensation insurance coverage." Tex. Lab. Code Ann. § 408.001(a). The TWCA defines "employer" as "unless otherwise specified, a person who makes a contract of hire, employs one or more employees, *and has workers' compensation insurance coverage.*" *Id.* § 401.011(18) (emphasis added). Under the TWCA, "workers' compensation insurance coverage" means "an approved insurance policy to secure the payment of compensation." *Id.* § 401.011(44)(A).

13

As pointed out by Lane, Section 401.011 does not define "approved." *See id.* However, the supreme court has stated that "[a]mong the[ TWCA's] requirements is the legislative directive that only workers' compensation policies *approved by [TDI]* are available in Texas." *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 658 (Tex. 2008) (emphasis added). "These state-approved policies are contracts between private insurance companies and employers; the employees of subscribing employers are the beneficiaries, and health care providers claim direct benefits under the policy." *Tex. Mut. Ins. Co.*, 610 S.W.3d at 859 n.26 (Bland, J., concurring) (citing Tex. Lab. Code Ann. §§ 406.003, .051, 408.001); *see Beldon Roofing & Remodeling Co. v. San Antonio Water Sys.*, 898 S.W.2d 351, 354 (Tex. App.—San Antonio 1995, writ denied) (stating that the "workers' compensation insurance coverage" definition under Section 401.011(44) restricts the methods by which an employer may obtain such coverage).

Labor Code Section 401.011 defines "insurance carrier" as, among other things, an insurance company, and it defines "insurance company" as "a person authorized and admitted by [TDI] to do insurance business in this state under a certificate of authority that includes authorization to write workers' compensation insurance." Tex. Lab. Code Ann. § 401.011(27)–(28); *see id.* § 406.003 ("An employer may obtain workers' compensation insurance coverage through a licensed insurance company or through self-insurance as provided by this subtitle."); *see also* Tex. Ins. Code Ann. § 2052.001 (defining "insurance company," in relation to workers' compensation, as an entity "authorized to engage in the business of workers' compensation insurance in

14

this state"). Labor Code Section 406.051(b) requires an insurance company contracting to provide workers' compensation insurance under the TWCA to write the coverage contract "on a policy and endorsements approved by [TDI]." Tex. Lab. Code Ann. § 406.051(a)–(b); *see* Tex. Ins. Code Ann. § 2052.002(a)–(b) (requiring standard policy forms and a uniform policy for workers' compensation insurance and stating that "an insurance company may not use a form other than one prescribed under this section unless the form is an endorsement: (1) appropriate to the company's plan of operation; and (2) submitted to and approved by [TDI]"). TDI is supposed to coordinate with the appropriate agencies of other states to share information regarding an employer who obtains all-states coverage and to ensure that TDI knows about an employer who obtains all-states coverage in another state but who fails to file notice with TDI.[6] Tex. Lab. Code Ann. § 406.053.

## 2. Notifications and administrative violations

Under Labor Code Section 406.004(a), an employer who does not obtain workers' compensation insurance coverage "shall notify the division in writing, in the time and as prescribed by commissioner rule, that the employer elects not to obtain coverage." *Id.* § 406.004(a). Under Section 406.006(a), an insurance company from

---

[6]Odle correctly points out that Lane's reference in his appellate brief to his TDI–DWC website searches for SUEZ North America and SUEZ NA cannot be considered in this appeal. Lane acknowledges that these searches were conducted "too late to make it into the record." We must determine a case based on the record as filed. *See Murphy v. Leveille*, No. 2-08-130-CV, 2009 WL 2619857, at *2 n.3 (Tex. App.—Fort Worth Aug. 26, 2009, no pet.) (mem. op.).

which an employer has obtained workers' compensation insurance coverage "shall file notice of the coverage and claim administration contact information with the division not later than the 10th day after the date on which the coverage or claim administration agreement takes effect, unless the commissioner adopts a rule establishing a later date for filing." *Id.* § 406.006(a). The required notice "shall be filed with [DWC] in accordance with Section 406.009," which requires DWC to collect and maintain this information and to monitor compliance. *Id.* §§ 406.006(b), .009(a), (d).

As last updated December 21, 1987, notice that an employer has become a subscriber "shall be filed with the board's Austin office by certified mail or in person within 30 days of the effective date of the policy and the notice must be completed in detail," with—among other things—the employer's FEIN, the insurance policy number, the policy's effective date, and the insurance company's complete name. 28 Tex. Admin. Code § 43.5. Likewise, insurance carriers are also required to notify DWC of workers' compensation insurance coverage. *Id.* § 110.1(d)–(e) (2013) (Tex. Dep't of Ins., Insurance Carrier Requirements for Notifying the Division of Insurance Coverage).[7]

---

[7]Neither party has addressed the fact that, under various Administrative Code provisions, Everest Premier Insurance Company, which issued the SUEZ Policy, could have notified TDI about the companies—SUEZ North America Inc. and Odle among them—for which it provided workers' compensation insurance coverage.

16

Chapter 415 of the Labor Code governs administrative violations by employers, insurance carriers, and employees, among others. *See* Tex. Lab. Code Ann. §§ 415.001–.008. "A reference in [the Labor Code] or other law . . . to a particular class of violation, administrative violation, or penalty shall be construed as a reference to an administrative penalty," which may not exceed $25,000 per day per occurrence; each day of noncompliance constitutes a separate violation. *Id.* § 415.025.

The administrative-violation scheme is part of the legislature's overarching framework to implement the workers' compensation system's goals. *See id.* § 402.021(a)(1)–(4). In implementing these goals, the legislature has expressed its intent that the state workers' compensation system "promptly detect and appropriately address acts or practices of noncompliance with [the TWCA] and rules adopted" thereunder. *Id.* § 402.021(b)(7); *see Ruttiger*, 381 S.W.3d at 442 ("A carrier's failure to comply with the Act's requirements, deadlines, and procedures is not without consequences . . . . provid[ing, among other things] that a carrier or its representative commits an administrative violation for any of twenty-two specified actions . . . .").

"The original creation of, continued existence of, and amendments to update and improve the workers' compensation system are within the [l]egislative function of establishing public policy." *Ruttiger*, 381 S.W.3d at 450. A "key" part of the system includes "the penalties imposed for failing to comply with legislatively mandated rules, and the procedures for imposing such penalties." *Id.*; *see In re Accident Fund Gen. Ins.*

17

*Co.*, 543 S.W.3d 750, 754 (Tex. 2017) (orig. proceeding) ("[DWC] is charged with ensuring all system participants, including carriers, comply with the rules, and when participants abuse the process, administrative penalties are available.").[8]

An employer commits an administrative violation if, among other things, it does not notify DWC in writing on the agency-prescribed forms that it has elected not to obtain coverage, Tex. Lab. Code Ann. § 406.004(a)–(b), (e), or if it does not notify each employee about whether it has workers' compensation insurance coverage, *id.* § 406.005(a)–(e). *See also id.* § 408.063(a)–(c) (failing to timely file wage statement after notice of injury), § 409.006(a)–(c), (e) (failing to comply with injury record-keeping requirements), § 411.032 (failing to meet certain reporting requirements).

Likewise, a workers' compensation insurer may commit a variety of administrative violations, including failure to timely file notice of coverage and claim administration contact information with DWC, *see id.* § 406.006(a)–(c), failure to provide claims service as required by the TWCA or to designate a representative to act as its agent before DWC, *see id.* §§ 406.010(a)–(b), (d), .011(a)–(b), or failure to maintain or provide TWCA's required accident prevention services or to use those services in a reasonable manner to prevent injury to its policyholders' employees, *see*

---

[8]In addition to insurers and employers, administrative violations apply to general contractors, *see* Tex. Lab. Code Ann. § 406.123(g), self-insurers, *see id.* §§ 407.067, .082, .104, and health care providers, *see id.* § 413.042. And any party may commit an administrative violation during the adjudication of disputes between the employee, employer, or insurer. *See id.* §§ 410.028(c), .112–.113, .156, .208(e).

*id.* § 411.068. *See also id.* §§ 409.021(a), (e), .022(c), .023(a), (c), .024(a)–(b) (addressing administrative violations relating to benefits payments). The TWCA also "provides the exclusive procedures and remedies for claims alleging that a workers' compensation carrier has improperly investigated, handled, or settled a worker['s] claim for benefits." *Accident Fund Gen. Ins. Co.*, 543 S.W.3d at 752.

Both employers and insurers commit an administrative violation if they fail to identify or confirm coverage status and claim administration contact information. Tex. Lab. Code Ann. § 406.009(d)–(e). All the administrative violations pertaining to coverage elections are subject to Labor Code Chapter 415's administrative penalties. *Id.* § 406.012. The Labor Code also sets out some criminal penalties, including a Class A misdemeanor or state jail felony for fraudulently obtaining workers' compensation insurance coverage. *Id.* § 418.002 (stating offense is a misdemeanor if the premium avoided is less than $2,500 and a state jail felony if the premium avoided is $2,500 or more); *see id.* §§ 411.034(a)–(d), .105, 413.043(a)–(b) (other misdemeanor offenses), § 414.006(a) (providing that DWC may refer cases to other agencies for further investigation or institution of appropriate proceedings).

Unless otherwise stated, no Labor Code administrative violations and penalties provide a private cause of action, and allowing parties to pursue remedies that circumvent DWC's exclusive procedures and remedies in the first instance "would undermine the workers' compensation system's careful benefits-determination and claims-resolution processes." *Mouton v. Houston ISD*, No. 01-22-00205-CV, 2023 WL

4065602, at *6 (Tex. App.—Houston [1st Dist.] June 20, 2023, pet. denied) (mem. op.) (citing *Accident Fund Gen. Ins. Co.*, 543 S.W.3d at 753).

DWC may seek sanctions when an insurer fails to accurately pay benefits and fails to timely or accurately report claim data. *Tex. Pol. Subdivisions Joint Self-Ins. Fund*, 681 S.W.3d at 493–94; *see also In re Old Republic Risk Mgmt.*, No. 12-19-00144-CV, 2019 WL 2462486, at *3 (Tex. App.—Tyler June 12, 2019, orig. proceeding) (mem. op.) ("For claims arising out of the claims-settlement process, [the TWCA,] with its definitions, detailed procedures, and dispute resolution process, demonstrates legislative intent for there to be no alternative remedies."). That is, the workers' compensation system "creates a level of certainty for employees by ensuring that an employer's violation of the State's various administrative rules and regulations will not deprive workers of the benefits under the system," and the administrative and civil penalties will not cause a company to forfeit its "subscriber" status. *Exxonmobil Corp. v. Kirkendall*, 151 S.W.3d 594, 601 (Tex. App.—San Antonio 2004, pet. denied) (op. on reh'g).

As potentially applicable here, "[a] person commits an administrative violation if the person . . . intentionally and knowingly obtains or maintains: . . . workers' compensation insurance from an insurer that is not authorized to engage in business in this state." Tex. Ins. Code Ann. § 2051.152(a)(2)(A). The penalty attached to this administrative violation is "not to exceed $5,000," and each day such an administrative violation occurs or continues is a separate violation. *Id.* § 2051.152(b)–

20

(c). Nothing in the record shows that Lane has requested the initiation of administrative-violation proceedings as to Odle or its insurer. *Cf.* Tex. Lab. Code Ann. § 415.031 ("Any person may request the initiation of administrative violation proceedings by filing a written allegation with [DWC].").

Some of our sister courts have addressed the interplay between administrative violations and the TWCA's employer protections. *See Becon Constr. Co. v. Alonso*, 444 S.W.3d 824, 833 (Tex. App.—Beaumont 2014, pet. denied); *Hand & Wrist Ctr. of Hous., P.A. v. SGS Control Servs., Inc.*, 409 S.W.3d 743, 751 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Specifically, committing an administrative violation does not affect an employer's ability to satisfy the employer element of the exclusive-remedy defense. *See Berry Contracting, L.P. v. Mann*, 549 S.W.3d 314, 324 (Tex. App.—Corpus Christi–Edinburg 2018, pet. denied) (holding that Section 406.123(f)'s requirement that a general contractor file a coverage agreement with a workers' compensation insurance carrier—the failure of which constituted an administrative violation—did not affect its ability to satisfy the exclusive-remedy's employer element).

In *Becon*, the employees argued that because the general workplace plan had not complied with certain TDI administrative rules, their employers could not rely on TWCA's exclusive-remedy defense. 444 S.W.3d at 833. The employers replied that TDI's administrative rules were directory, not mandatory, and that TDI had not created an administrative penalty stripping entities of the exclusive-remedy defense provided by the legislature in the TWCA for violation of the regulations. *Id.* The

court observed that because neither the TWCA nor the administrative rules described a penalty for violating those rules, the employees' interpretation would discourage employer participation in the workers' compensation scheme and "might prevent some employees who would otherwise be covered by insurance from being covered under these types of policies due to the violation of regulations." *Id.* The court concluded that the proper penalty for those administrative violations should be left to TDI when it did not appear "that the [l]egislature intended for these types of violations to strip employers of defenses or to cause employees to lose the benefits of their coverage." *Id.*; *see ExxonMobil Corp. v. Alvarez*, No. 14-22-00863-CV, 2024 WL 847701, at *8 (Tex. App.—Houston [14th Dist.] Feb. 29, 2024, no pet.) (mem. op.) (relying on *Becon* for same proposition).

In *Hand & Wrist Center*, a medical-provider case, the court noted that Labor Code Section 409.005, which required an employer to notify its insurance carrier of employee injuries requiring absence from work for more than one day, did "not provide that if the employer fails to comply it has forfeited its protections under the [TWCA]." 409 S.W.3d at 750. Instead, such a failure is an administrative violation that allows DWC to assess administrative penalties. *Id.* at 751 (citing Tex. Lab. Code Ann. § 409.005(f)). In reaching this conclusion, the court relied on *Regalado v. H.E. Butt Grocery Co.*, 863 S.W.2d 107, 110 (Tex. App.—San Antonio 1993, no writ), and *Wesby v. Act Pipe & Supply, Inc.*, 199 S.W.3d 614, 618 (Tex. App.—Dallas 2006, no pet.), both of which construed an earlier version of the TWCA to conclude that the

22

statutory scheme is not one of waiver when it explicitly provides for noncompliance penalties. *Hand & Wrist Center*, 409 S.W.3d at 750–51; *see Regalado*, 863 S.W.2d at 110 ("We believe the legislature intended to assure compliance with the notice requirements through the assessment of a fine, not through the harsher penalty of waiver.").

## C. Application

To prevail on the affirmative defense of Section 408.001(a)'s exclusive remedy, Odle had to establish that Lane (1) was its employee at the time of the work-related injury and (2) was covered by its workers' compensation insurance policy. *See Waste Mgmt. of Tex., Inc.*, 622 S.W.3d at 277; *see also Grant v. Wind Turbine & Energy Cables Corp.*, No. 02-21-00036-CV, 2022 WL 2840142, at *9 (Tex. App.—Fort Worth July 21, 2022, no pet.) (mem. op.) (holding that when the evidence conclusively established that the plaintiff was an "employee" under the TWCA and that the company had workers' compensation coverage, the trial court properly granted summary judgment for the company).

To support its summary judgment motion on the exclusive-remedy affirmative defense, Odle attached Lane's amended original petition in which Lane alleged that he was Odle's employee at the time of the work-related injury and attached the affidavit of Greiner, who averred that Lane had been injured while working for Odle and that Lane was covered by the SUEZ Policy.

In addition to Greiner's exhibits showing workers' compensation insurance coverage that directly referenced Texas and some of Texas's Labor Code provisions, as well as providing the contact information for TDI and DWC, Odle attached Lyon's affidavit attesting to the benefits Lane had received under the policy. *See* Tex. R. Civ. P. 166a(c), (f); *Guevara v. WCA Waste Corp.*, No. 01-15-01075-CV, 2017 WL 1483320, at *5 (Tex. App.—Houston [1st Dist.] Apr. 25, 2017, pet. dism'd) (mem. op.) ("Waste Corp. and Gonzales were not required to produce the actual [workers' compensation] policy to prove Waste Corp. had coverage; they were permitted to prove Waste Corp.'s subscriber status with other evidence, such as affidavits."); *Baker v. Cook Children's Physician Network*, No. 2-07-174-CV, 2008 WL 553712, at *3 (Tex. App.—Fort Worth Feb. 28, 2008, pet. denied) (mem. op.) (holding affidavit of employer's risk-management director, which stated that the company was covered by a workers' compensation policy when the employee worked for the company, was sufficient to carry the employer's burden to establish that it was a workers' compensation subscriber); *see also Cox v. Waste Mgmt. of Tex., Inc.*, 300 S.W.3d 424, 428, 440 (Tex. App.—Fort Worth 2009, pet. denied) ("[T]he evidence submitted by [the employer] (through an affidavit signed by [its human-resources manager]) establishes that [the company] carried workers' compensation insurance during [the plaintiff's] employment and that [the plaintiff] was covered under the insurance.").

This evidence established Odle's affirmative defense and defeated Lane's no-evidence grounds because, to meet the affirmative defense's elements, Odle did not

have to show that the SUEZ Policy had been approved by TDI or that Odle or its parent company were registered with DWC. *See Baker*, 2008 WL 553712, at \*3; *see also Martinez v. H.B. Zachry Co.*, 976 S.W.2d 746, 748 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (holding evidence sufficient to support summary judgment when company's claims manager swore in his affidavit that the document attached thereto was a true and correct copy of the workers' compensation policy's information page and that the policy covered the plaintiff at the time of his accident); *see also Webester v. GSE Lining Tech. LLC*, No. 14-16-00841-CV, 2017 WL 6543441, at \*7 (Tex. App.— Houston [14th Dist.] Dec. 21, 2017, pet. denied) (mem. op.) (holding that company's affidavit and information page of its workers' compensation insurance policy for the relevant time frame were sufficient to establish that the company was a workers' compensation insurance subscriber).

After Odle established its affirmative defense, the summary judgment burden shifted to Lane to raise a genuine issue of material fact as to workers' compensation coverage. *See Grant*, 2022 WL 2840142, at \*8. Instead of responding to Odle's summary judgment motion by attaching evidence to raise a genuine issue of material fact as to coverage, Lane acknowledged having received the policy's benefits but—as noted above—complained that there was no evidence that the policy had been approved by TDI or that Odle or its parent company had registered with DWC as workers' compensation subscribers—neither of which, again—was an element of Odle's affirmative defense, and both of which presented only potential administrative

25

violations under the TWCA. *See Baker*, 2008 WL 553712, at \*3 ("Cook's summary judgment evidence—Testa's affidavit—absent controverting summary judgment evidence, conclusively established Cook's subscriber status at the time of the incident at issue."); *see also Warnke v. Nabors Drilling USA, L.P.*, 358 S.W.3d 338, 343–44 & n.5 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (op. on reh'g) (stating, in a different statutory-based summary judgment challenge, that "[c]ourts in this state, including this court, have held that the [Section 408.001(a)] exclusivity bar does not hinge on whether notice has been provided to the employee" and noting that failure to give such notice constituted an administrative violation punishable by a fine); *Kirkendall*, 151 S.W.3d at 600 ("[W]hile Mobil's plan most likely violates an administrative rule, nothing in Texas law provides that this violation causes an employer to forfeit its subscriber status.").[9]

---

[9]On appeal, Lane lists several cases to "illustrate the evidence necessary to establish [TDI] approval," citing *Warnke*, *Kirkendall*, and *McClelland v. Gronwaldt*, No. 09-06-566-CV, 2007 WL 4681509, at \*2 (Tex. App.—Beaumont Jan. 10, 2008, pet. denied) (mem. op.). But Lane ignores that under Rule of Civil Procedure 166a(c), summary judgment evidence may consist of, among other things, supporting affidavits, and that "[a] summary judgment may be based on uncontroverted testimonial evidence of an interested witness . . . if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." Tex. R. Civ. P. 166a(c). Notwithstanding Lane's evidentiary preferences, Odle's uncontroverted summary judgment evidence showed a workers' compensation policy referencing Texas coverage and showing payment of the policy's benefits to Lane, and Lane brought forth no evidence to raise a genuine fact issue about the policy's existence, coverage, or validity under Texas law. *See McClelland*, 2007 WL 4681509, at \*3 (pointing out that even if a company's plan "most likely violates an administrative rule, nothing in Texas law provides that this violation causes an employer to forfeit its subscriber status").

Lane did not challenge Odle's summary judgment evidence showing that Odle had provided workers' compensation insurance to him at the time of the accident or that he had received benefits from that insurance coverage. *See Warnke*, 358 S.W.3d at 344;[10] *see also Martinez*, 976 S.W.2d at 748 ("Martinez put on no summary judgment evidence to show that Zachry was not a subscriber at the time of the accident.").

Further, Lane searched for the wrong company name on TDI–DWC's website, and the evidence that he attached to support the traditional portion of his cross-motion showed that there was no coverage as to SUEZ WTS USA, INC., not SUEZ North America Inc., Odle's parent company, and thereby failed to raise a fact issue as to Odle's coverage under the SUEZ Policy.

Because Odle's uncontroverted summary judgment evidence conclusively established that Lane was Odle's employee and that he was covered by Odle's workers' compensation insurance policy at the time of his work-related injuries, the

---

[10]Lane did not challenge Greiner's affidavit testimony about the SUEZ Policy's Texas coverage, and such affidavit testimony has been held sufficient to support summary judgment on the TWCA's exclusive-remedy provision. *See Guevara*, 2017 WL 1483320, at *5–6 (holding employer satisfied its burden when it presented an affidavit averring to coverage and plaintiff failed to present rebutting evidence); *see also Trevino v. Jalapeno Tree Operating, LLC*, No. 05-23-00086-CV, 2024 WL 702290, at *2 (Tex. App.—Dallas Feb. 21, 2024, no pet.) (mem. op.) ("The policy listing Jalapeno Tree as an additional insured is sufficient summary judgment proof of workers' compensation coverage."); *AmeriGas Propane, L.P. v. Aboytes-Muniz*, No. 09-18-00122-CV, 2019 WL 2127750, at *8–9 (Tex. App.—Beaumont May 16, 2019, pet. denied) (mem. op.) (holding undisputed evidence of payments to injured worker made under workers' compensation policy shifted burden to worker to disprove or raise a fact issue on the company's exclusive-remedy defense).

trial court did not err by granting summary judgment for Odle or by denying Lane's cross-motion. We overrule both of Lane's issues without reaching his arguments on Odle's election-of-remedies summary judgment ground. *See* Tex. R. App. P. 47.1.

## IV. CONCLUSION

Having overruled both of Lane's issues, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Delivered: August 22, 2024